UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLOS FIGUEROA,

                    Petitioner,

vs.                                    Case No.  2:05-cv-162-FtM-29SPC

SECRETARY, D.O.C.; FLORIDA ATTORNEY
GENERAL,

                    Respondents.
_____


## OPINION AND ORDER

### I.  Status

    Petitioner Carlos Figueroa,[1] who is proceeding pro se,
initiated this action by filing a Petition for Writ of Habeas
Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254.
Petitioner challenges his state court judgment of conviction
entered in the Twentieth Judicial Circuit Court in Lee County,
Florida.  Petition at 2.  In compliance with this Court's Order,
Respondent filed a Response (Doc. #16, Response) and submitted
numerous exhibits, including the post-conviction motions filed by
Petitioner and the transcripts from Petitioner's state court
proceedings.  See Doc. #13 (not scanned on docket).  Petitioner

_____

    [1]Petitioner will hereinafter be referred to as "Figueroa" or
"Petitioner."

filed a Reply (Doc. #18, Reply) to the Response and attached exhibits.[2]

## II. Procedural History

The State charged Petitioner and his co-defendant, Vincent Rodriquez,[3] with two counts: robbery with a firearm and first degree grand theft occurring at a jewelry store, Treasures Unlimited located in Ft. Myers, Florida. Information at Exh. 1, Vol. 1 at 4; Response at 2. Petitioner and his co-defendant had a joint jury trial on March 10-11, 1999. See generally trial transcript at Exh 1, Vol. 4-5. The jury returned a guilty verdict on both counts for both defendants. Exh. 1, Vol. 2 at 21. In accordance with the verdict, on April 21, 1999, the trial court sentenced Petitioner to life in prison on the first count and a concurrent fifteen year sentence on the second count.[4] Exh. 1, Vol 2 at 60; Response at 2.

On June 18, 1999, Petitioner filed a direct appeal raising five grounds: (1) Figueroa was subject to impermissibly suggestive identification procedures; (2) the State failed to establish that

---

[2]The exhibits Petitioner attaches include 911 transcribed conversations from witness' calls regarding the robbery. Petitioner also attaches some of the statements of an eyewitness. See Doc. #18-2. These records are included among those attached by the Respondent.

[3]Co-defendant Vincent Rodriquez will hereinafter be referred to as "Rodriquez" or "co-defendant."

[4]As discussed in more detail later, upon post-conviction motion, the trial court reversed the sentence on the second count. Thus, Petitioner's life sentence on the first count remains.

Figueroa was the criminal agency; (3) the trial court erred in denying Figueroa's motion for judgment of acquittal on the first degree grand theft charges; (4) the trial court erred in sentencing Figueroa for an uncharged offense; and (5) if the appellate court responded favorably to the grounds 3 and 4, then the habitual offender sentence and the guideline scoresheet are excessive.  Exh. 2.  The State filed an answer brief.  Exh. 3. Petitioner's counsel filed a waiver regarding the reply brief.  Exh. 4.  The appellate court *per curiam* affirmed the trial court on December 29, 1999. State v. Figueroa, 752 So. 2d 605 (Fla. 2d DCA 1999); Exhs. 5, 6.

Petitioner filed a *pro se* petition for writ of habeas corpus with the state appellate court on July 11, 2000.  Exh. 7.  In pertinent part, Petitioner argued that the prosecutor exceeded "permissible bounds" during cross-examination of the co-defendant. Exh. 7.  In particular, Petitioner argued that the prosecutor elicited testimony from Rodriquez regarding Rodriquez' prior convictions, which destroyed Rodriquez' credibility.  Id. at 85. Petitioner argued that the prosecutor "compounded error" on re-cross of Rodriquez.  Petitioner lastly argued that the prosecutor committed error during her closing argument by referring to the type of crime as a "smash and grab" and accusing Rodriquez of being the "master mind" and Petitioner his "puppet."  Id. at 88.  In closing, Figueroa argued that he was denied due process and deprived of a fair trial "by being connected" to Rodriquez.  Id. at

89.   The appellate court denied the petition on July 27, 2000, without a written opinion.  State v. Figueroa, 787 So. 2d 859 (Fla. 2d DCA 2000); Exhs. 8, 9.  Petitioner filed a motion for rehearing, which the appellate court also denied.  Exh. 10.

On August 16, 2000, Petitioner filed a successive state habeas petition for writ of habeas corpus raising two grounds: (1) Petitioner was not informed that he had one appeal as of right; and (2) appellate counsel provided ineffective assistance of counsel for not raising trial counsel's ineffectiveness on direct appeal for not objecting to the prosecutor's line of questioning of co-defendant, Rodriquez.  Exh. 11.  The appellate court denied the petition without a written opinion.  Figueroa v. State, 781 So. 2d 1091 (Fla. 2d DCA 2000);  Exhs. 12, 13.

Petitioner then filed a "motion to vacate conviction and/or sentence" with the trial court on February 26, 2001, which the court construed as a motion pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure.  Exh. 16.  Petitioner argued that his conviction for first degree grand theft was illegal because it was subsumed by the greater offense of armed robbery. Id. at 1.  As such, Petitioner said his convictions and sentences constituted a double jeopardy violation.   Id.  On April 23, 2003, the trial court granted Petitioner's motion, Exh. 17, finding that the "convictions and sentences for first degree grant theft and robbery with a firearm violate[d] the prohibition against double jeopardy."  Id. at 2.  The trial court noted that no re-sentencing

hearing was necessary because Petitioner's conviction for robbery with a firearm was not affected by the court's decision to vacate the second count.  _Id._  The court directed the Clerk to file an Amended Judgment and Sentence form omitting the conviction and sentence for first degree grand theft. _Id._

On July 4, 2001, during the pendency of his Rule 3.800(a) motion, Petitioner filed a _pro se_ Rule 3.850 motion raising three grounds: (1) trial counsel was ineffective for failing to move to suppress the "stop" of Petitioner, which was based upon a BOLO that was issued pursuant to a 911 call; (2) trial counsel was ineffective for failing to move to suppress identification based upon a "suggestive show-up"; (3) trial counsel was ineffective for failing to move to suppress the in and out-of-court identification of Petitioner by Loretta Arledge; and (4) counsel was ineffective for failing to impeach Arledge with inconsistent and exculpatory statements.  _See_ _generally_ Exhs. 18, 19.  The trial court denied the motion in part, ordered an evidentiary hearing, and appointed Petitioner counsel.  Exh. 19.  The trial court granted Petitioner an evidentiary hearing on grounds one, two, and three, and denied ground four, finding that the record conclusively refuted Petitioner's allegation that counsel did not impeach Arledge's testimony with her prior inconsistent statements.  _Id._ at 2.

On April 17, 2003, the trial court held the evidentiary hearing on Petitioner's Rule 3.850 motion.  Exh. 28, Vol 2 at 167-243.  After the evidentiary hearing, the trial court entered an

order denying Petitioner's Rule 3.850 motion.  Exh. 20.  Petitioner filed a *pro se* appeal to the appellate court arguing that the trial court erred when it summarily denied ground four of his 3.850 motion and when it denied him relief on the remaining grounds after holding an evidentiary hearing.  Exh. 21.  The State filed an answer brief.  Exh. 22.  Petitioner filed a reply brief.[5]  Exh. 24.  The appellate court *per curiam* affirmed the trial court's decision.  Exhs. 25, 26.

Petitioner filed a successive rule 3.850 motion, *pro se*, dated February 11, 2005.  Exh. 29.  On February 23, 2005, the trial court denied the motion as untimely, noting that Petitioner did not set forth grounds that would nullify the two-year time limitation for filing rule 3.850 motions.  Exh. 30.  Petitioner did not appeal the trial court's decision.  See generally record; Response at 3.  Petitioner then filed the federal petition *sub judice* on April 5, 2005.[6]

### III.  Applicable § 2254 Law

Figueroa filed his timely Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act

---

[5]The appellate court ordered Petitioner's first reply brief stricken as the page limit exceeded the court's rule on page limits.  Exh. 23.  Petitioner then filed a reply brief in accordance with the rule.  Exh. 24.

[6]The AEDPA imposes a one-year statute of limitations on § 2254 actions.  28 U.S.C. § 2244(d).  Respondent concedes that due to Petitioner's collateral appeals, the Petition in this Court was timely filed.  Response at 4, n.2.  The Court agrees.

of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec. Dept. of Corrections, 476 F.3d 1193, 1208 (11th Cir. 2007). See also Parker v. Sec. Dept. of Corrections, 331 F.3d 764 (11th Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Neither party disputes the applicability of the AEDPA.

## A. Evidentiary Hearing

Petitioner was afforded an evidentiary hearing on one of his Rule 3.850 motions by the trial court and it does not appear that Petitioner requests an evidentiary hearing before this Court. Nonetheless, a petitioner is restricted in his ability to use an evidentiary hearing in a federal habeas proceeding to develop facts to support his claim. A federal evidentiary hearing is only allowed if: (1) petitioner was not at fault for failing to develop the factual bases for his claims in state court, or (if he was at

fault), if the conditions prescribed by § 2254(e)(2) apply.[7]
Bradshaw v. Richey, 126 S. Ct. 602, 605-06 (2005); Holland v.
Jackson, 542 U.S. 649, 652-53 (2004). Even if an evidentiary
hearing is not precluded by § 2254(e)(2), "a federal court must
consider whether such a hearing could enable an applicant to prove
the petition's factual allegations, which, if true, would entitle
the applicant to federal habeas relief." Schriro v. Landrigan, 127
S. Ct. 1933, 1940 (2007) (citation omitted). "It follows that if
the record refutes the applicant's factual allegations or otherwise
precludes habeas relief, a district court is not required to hold
an evidentiary hearing." Id. Based upon the record and applicable

---

[7]Section 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim
in State court proceedings, the court shall not hold an evidentiary
hearing on the claim unless the applicant shows that -

(A) the claim relies on -

(I) a new rule of constitutional law, made
retroactive to cases on collateral review by
the Supreme Court, that was previously
unavailable; or

(ii) a factual predicate that could not have
been previously discovered through the
exercise of due diligence; and

(B) the facts underlying the claim would be sufficient
to establish by clear and convincing evidence that but
for constitutional error, no reasonable factfinder would
have found the applicant guilty of the underlying
offense.

law, the Court concludes that Petitioner is not entitled to an evidentiary hearing in this matter.

### B.   Federal Question

A federal court may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000).  Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

### C.   Exhaustion

If a ground asserted by a petitioner warrants review by a federal court under § 2254, the petitioner must have first afforded the state courts an initial opportunity to address any federal issues.  28 U.S.C. § 2254(b)(1)(A).  This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.  Rhines v. Weber, 544 U.S. 269, 274 (2005).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."

O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)("exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'").

A petitioner must present the same claim to the state court that he now requests the federal court to consider. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)(citations omitted); Kelly v. Sec. Dept. of Corrections, 377 F.3d 1317, 1343-44 (11th Cir. 2004). Thus, the exhaustion requirement is not satisfied if the claims raised before the state court were not raised in terms of federal law. Gray v. Netherland, 518 U.S. 152, 162-63 (1996); Jimenez v. Sec. Dept. Corrections, 481 F.3d 1337, 1342 (11th Cir. 2007). With regard to claims of ineffectiveness of trial counsel, a petitioner must have presented those claims to the state court "'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" Ogle v. Johnson, 488 F. 3d 1364, 1368 (11th Cir. 2007)(citing NcCnair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).

If a petitioner fails to exhaust a claim, the court may dismiss the petition without prejudice to permit exhaustion, if appropriate. <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004); <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982). Alternatively, the court has the discretion to grant "a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." <u>Ogle</u>, 488 F.3d at 1370 (citations omitted).

## D.   **Procedural Default**

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." <u>Henderson</u>, 353 F.3d at 891 (<u>quoting</u> <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)). A procedural default may also result from non-compliance with state procedural requirements. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

> Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 85-86, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). When a state court correctly applies a procedural default principle of state law, federal courts must abide by the state court decision, <u>Harmon v. Barton</u>, 894 F.2d 1268, 1270 (11th Cir. 1990), but only if the state procedural rule is regularly followed, <u>Ford v. Georgia</u>, 498 U.S. 411, 424,

111 S. Ct. 850, 112 L. Ed. 2d 935 (1991). . .
.

Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), cert.
denied, 127 S. Ct. 1823 (2007); see also Baldwin v. Johnson, 152
F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may
not review a claim that a petitioner procedurally defaulted under
state law if the last state court to review the claim states
clearly and expressly that its judgment rests on a procedural bar,
and the bar presents an independent and adequate state ground for
denying relief), cert. denied, 526 U.S. 1047 (1999).  This is true
where the appellate court silently affirms the lower court
procedural bar since federal courts should not presume an appellate
state court would ignore its own procedural rules in summarily
denying applications for postconviction relief. Tower v. Phillips,
7 F.3d 206, 211 (11th Cir. 1993).

A procedural default for failing to exhaust state court
remedies will only be excused in two narrow circumstances.  First,
a petitioner may obtain federal habeas review of a procedurally
defaulted claim if he shows both "cause" for the default and actual
"prejudice" resulting from the asserted error. House v. Bell, 547
U.S. 518, 536-37 (2006); Mize, 532 F.3d at 1190.  "Cause"
ordinarily requires a petitioner to demonstrate "that some
objective factor external to the defense impeded the effort to
raise the claim properly in the state court." Henderson v.
Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (quoting Wright v.

-12-

Hopper, 169 F.3d 695, 703 (11th Cir. 1999)).  Constitutionally
ineffective assistance of counsel can constitute cause if that
claim is not itself procedurally defaulted.  Edwards v. Carpenter,
529 U.S. 446, 451-52 (2000).  To show "prejudice," a petitioner
must demonstrate that there is "at least a reasonable probability
that the result of the proceeding would have been different."
Henderson, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may
obtain federal habeas review of a procedurally defaulted claim,
even without a showing of cause and prejudice, if such review is
necessary to correct a fundamental miscarriage of justice.  House,
547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at
892.  This exception is only available "in an extraordinary case,
where a constitutional violation has resulted in the conviction of
someone who is actually innocent."  Henderson, 353 F.3d at 892.
See also House, 547 U.S. at 536-37 (prisoner asserting actual
innocence must establish that, "in light of new evidence, it is
more likely than not that no reasonable juror would have found
petitioner guilty beyond a reasonable doubt") (citation omitted).

**E.   Deference to State Decision**

Where a petitioner's claim raises a federal question, was
exhausted, is not procedurally barred, and was adjudicated on the
merits in the state courts, the federal court must afford a high
level of deference to the state court's decision.  See, e.g.,
Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Habeas

relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec. Dept. of Corrections, 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established

Federal law." <u>Wright v. Van Patten</u>, 128 S. Ct. 743, 747 (2008); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. <u>Brown</u>, 544 U.S. at 141; <u>Mitchell</u>, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application"

inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review de novo; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. Rice v. Collins, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046

(2001) (citation omitted).  An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. <u>Rolling v. Crosby</u>, 438 F.3d 1296, 1299 (11th Cir.), <u>cert. denied sub nom.</u> <u>Rolling v. McDonough</u>, 126 S. Ct. 2943 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls outside of the scope of § 2254(d)(1)'s restrictions and the reviewing federal habeas court owes no deference to the state court decision when evaluating that claim.  <u>Davis v. Sec. Dept. of Corrections</u>, 341 F.3d 1310, 1313 (11th Cir. 2003).

**F.   Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  <u>Newland</u>, 527 F.3d at 1184.  In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006).  A Court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have

done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### IV. Federal Petition

Petitioner raises four grounds of relief in the Petition *sub judice*: (1) the pre-trial identification was "impermissibly suggestive" and tainted the entire trial; (2) the information was incorrect; (3) appellate counsel rendered ineffective assistance for failing to consolidate Petitioner's direct appeal with his co-defendant's direct appeal; and (4) trial counsel rendered ineffective assistance by failing to file a motion to suppress the impermissible suggestive identification mentioned in ground one.  See generally Petition.  Respondent, in summary, argues that grounds one, two, and three are procedurally barred.  Response at 4-22.  The Court will first address whether grounds one, two, or three are procedurally barred.

**A.  Whether the pre-trial identification was impermissibly suggestive and whether trial counsel rendered ineffective assistance of counsel for failing to file a motion to suppress**

In ground one, Petitioner argues that Loretta Arledge's pre-trial identification of him as the robber, which took place at the scene of the crime, was "highly suggestive." Petition at 8.  In ground four, Petitioner argues that trial counsel provided

-19-

ineffective assistance of counsel by not filing a motion to suppress the show-up identification. Id. at 24. Because these grounds are related, the Court will address them together.

Petitioner states that the police first brought him to the front of the shopping center where the jewelry store was located. Petitioner claims that "several witnesses to the crime attempt[ed] to view him as he was handcuffed, by himself, in the rear of the police car." Id. at 8. Petitioner states that the officer then drove him to the rear side of the shopping center, where he claims he was "made to stand next to [the car] . . . handcuffed, [while] potential witnesses peeked from the open service door in an attempt to identify Petitioner as one of the perpetrators of the crime." Id. at 10. Petitioner argues that the "totality of the circumstances," including the fact that the police response was "very quick," that the police were under pressure to apprehend the armed robber, and that his clothing at the time of the arrest did not match the BOLO report, prejudiced him. Id. at 12.

Respondent argues that this ground is procedurally defaulted because defense counsel did not file a motion to suppress the pre-trial identification prior to trial and did not object to the admission of the identification at trial. Response at 4. Thus, Respondent maintains that Petitioner has not preserved a federal constitutional issue with respect to this claim and this claim is procedurally defaulted. Id. at 4-5. Respondent then argues that Petitioner cannot show cause, prejudice, or a fundamental

miscarriage exception to this procedural default. _Id._ at 8-10.
Respondent asserts that Petitioner does not show "cause" by
claiming an ineffective assistance of counsel claim because he does
not satisfy both prongs of the _Strickland_ test. _Id._ at 9. Any
other allegation of cause, Respondent argues, would now be
procedurally barred by the two-year time limit on filing a rule
3.850 motion. _Id._ at 10. Respondent further argues that
Petitioner does not qualify for the fundamental miscarriage of
justice exception because he has no new and reliable evidence of
actual innocence. _Id._ Alternatively, Respondent, addressing the
merits of Petitioner's claim, argues that Petitioner does not show
that the state courts' decisions were an unreasonable application
of established Supreme Court precedent. _Id._

Petitioner's appellate counsel raised this claim on direct
appeal, arguing that the officer arrested Petitioner and
immediately took him back to the scene for the identification.
Exh. 2 at 11. Counsel argued that Arledge was the only witness to
make any identification of Petitioner. _Id._ In response, the
State, _inter alia_, argued that Figueroa failed to preserve this
issue for appeal because no motion to suppress the identification
testimony was filed before or during trial. Exh. 13 at 3. "The
record contains no pretrial objection and no timely objection to
the identification testimony. Therefore, [Petitioner] waive[d]

this issue for appeal." Id.  The appellate court *per curiam* affirmed the decision of the trial court.

The Court agrees with Respondent that, absent an exception to the rule, this claim is procedurally barred.  Under Florida law, "[a] party opposing admission of evidence must object to its admission at trial or the party cannot complain of its admission on appeal.  The objection must be made before the evidence is admitted and it must be renewed, notwithstanding a prior ruling on a motion to suppress." Buchanan v. State, 575 So. 2d 704, 707 (Fla. 3d DCA 1991)(internal citations omitted).  The trial record supports the finding that counsel did not take these requisite steps to preserve the matter for appeal.  As such, ground one is procedurally defaulted unless Petitioner can show cause and prejudice for his failure to exhaust the ground, or can demonstrate a fundamental miscarriage of justice.  See Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003); see also Fla. R. Crim. P. 3.800, 3.850(b)(g).

In Reply, Petitioner argues, *inter alia*, that he can show cause and prejudice "resulting in a fundamental miscarriage of justice." Reply at 2.  Petitioner appears to argue ineffectiveness of trial counsel as cause for the procedural default of this claim. Petitioner argues that trial counsel's decision not to file motions to suppress based on the illegal stop, considering the police had no reasonable suspicion to stop him based on the BOLO from the 911 call, and the suggestive show-up identification amounted to

ineffective assistance of counsel. <u>Id.</u> at 25. Petitioner asserts that the state courts "used an unreasonable application of <u>Strickland</u>" and that trial counsel's failure to file a motion to suppress meets the "cause" threshold.[8] <u>Id.</u> at 2-3. Petitioner then argues that the "totality of the circumstances" surrounding the pre-trial identification by Arledge was not reliable. Petitioner directs the Court to Arledge's description of the perpetrator on the 911 transcribed telephone phone. <u>Id.</u> at 4.

As discussed above, constitutionally ineffective assistance of counsel can constitute "cause" if that claim is not itself procedurally defaulted. <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1222 (11th Cir. 2002)(citing <u>Strickland</u>, 466 U.S. 690); <u>see also</u> <u>Edwards</u>, 529 U.S. at 451-52. In other words, in order for a petitioner to rely upon the ineffective assistance of counsel as cause for the default, the "claim of ineffective assistance [of counsel must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." <u>Mize v. Hall</u>, 532 F.3d at 1192 n.5; <u>Coleman v. Thompson</u>, 501 U.S. 722, 755 (1991); <u>Hill v. Jones</u>, 81 F.3d 1015, 1029-31 (11th Cir. 1996); <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000). Thus, the Court reviews ground four to determine whether Petitioner exhausted his state remedies with respect to this claim.

---

[8]In his Reply, Petitioner acknowledges that "Ground Four is inextricably intertwined with Ground One." Reply at 11.

Petitioner raised this ineffective assistance of counsel claim in his rule 3.850 motion. Exh. 18. The trial court held an evidentiary hearing on this claim. Exh. 19. After the hearing, the trial court entered an order denying the motion with respect to this claim. Exh. 20. Petitioner then filed an appeal of the denial, and the appellate court *per curiam* affirmed the trial court's denial. Thus, Petitioner's ineffective assistance of trial counsel claim is not procedurally defaulted and may constitute an exception to Petitioner's procedural default of ground one.

"In order to constitute cause sufficient to overcome procedural default, a counsel's performance must be *constitutionally* ineffective under the standards of Strickland." Jackson v. Herring, 42 F.3d 1350, 1358 (11th Cir. 1995)(citing Devier v. Zant, 3 F.3d 1445, 1455 (11th Cir. 1993)(noting that a petitioner could not use ineffective assistance of counsel as cause for procedural default because he failed to satisfy two-prong Strickland test))(other citations omitted). "Where suggestive pretrial confrontations may have created a substantial likelihood of irreparable misidentification at trial, the core question is whether under the totality of the circumstances, the in-court identification was reliable." Jones v. Newsome, 846 F.2d 62, 64 (11th Cir. 1988). The following factors should be considered in making that determination: (1) whether the witness had the opportunity to view the criminal at the time of the crime; (2) the

degree of attention by the witness; (3) the accuracy of the witness' prior description; (4) the level of certainty displayed by the witness; and (5) the length of time between the crime and the identification.  Neil v. Biggers, 409 U.S. 188 (1972).

Here, the Court finds that the trial court's decision is not contrary to or an unreasonable application of federal law, nor did the decision involve an unreasonable determination of facts. During the trial court's evidentiary hearing, defense counsel testified that he did not file a motion to suppress in this case because he only files such motions when he has a "good faith basis to file them."  Exh. 20 at 195.  He said that it was his professional judgment not to file the motion.  Id.  Specifically, during the evidentiary hearing, defense counsel stated:

> I'm familiar with the Court's position that show-ups are not favored, but I don't believe that just because it was a show-up identification they are excludable.  I think that when I looked at it, based upon the totality of everything that had occurred, I didn't think it was appropriate to file that motion.  The identification, perhaps it wasn't exact or meant what she had indicated initially, but it was close, the time frame, the distance from where he [Petitioner] was apprehended.  Something is sticking in my mind that they had found some clothes in that wooded area.

Exh. 28, Vol 2 at 180.  With regard to filing a motion to suppress the BOLO, trial counsel recalled the factors used to determine whether the court should suppress a BOLO, but similarly determined that there were not sufficient grounds to file this motion based upon the information from the people who had called 911.  Id. at 176-178.  In denying Petitioner's motion, the trial court held

"that trial counsel's performance was reasonable when all of the circumstances were viewed from the attorney's perspective at the time of trial."  Exh. 20 at 196.

Based on the record before the Court, the state court's decision that trial counsel's actions were not deficient, did not involve an unreasonable application of clearly established law, nor was it objectively unreasonable.  The trial court correctly identified Strickland as the governing legal standard and correctly applied it to the facts presented during the evidentiary hearing. Exh. 20 at 195.  Trial counsel recognized that although show-up identifications are not favored, based on the facts in this case, counsel thought that filing a motion to suppress either the stop after the BOLO or the show-up identification was improper.  Based on the totality of the circumstances, it cannot be said that there was a substantial likelihood of irreparable misidentification that would have led to the exclusion of the identification evidence. Alredge viewed Petitioner during the robbery when she ran from her store to the window of the jewelry store and saw him and another man breaking glass.  Exh. 1, Vol. 4 at 171.  She testified that she "stared at one of them because [she] knew that people were going to ask [her] what these people looked like."  Id.  She made eye contact with Petitioner.  Id. at 175.  One and a half hours had passed from the time she saw Petitioner to the time she positively identified him at the scene.  Id. at 172.  Petitioner acknowledges that the police response was "very quick."  Petition at 12.

Alredge immediately identified Petitioner as one of the robbers when police brought him to the scene.  Exh. 1, Vol. 4 at 182.  She had stated that he was wearing a gray-silvery suit and Petitioner was found wearing this color shirt.  Id. at 178.  Moreover, the presumption that trial counsel's performance was reasonable was strong in this case based on counsel's extensive experience in criminal trials.  Exh. 28, Vol. 2 at 183 (stating that at the time counsel represented Petitioner he had been practicing for twelve or thirteen years and at least half of his practice consisted of criminal cases).  Because Petitioner does not establish that his trial counsel was deficient under the first prong of Strickland, it is unnecessary to address the second prong of whether his counsel's conduct prejudiced his defense.  Consequently, the Court denies grounds one and four of the Petition.

## B.  Ineffective assistance of appellate counsel

In ground three, Petitioner argues that appellate counsel rendered ineffective assistance by failing to seek consolidation on direct appeal of his case with his co-defendant's case.  Petition at 21.  Petitioner states that he was represented by conflict-free counsel on direct appeal and his co-defendant was represented by the public defender's office.[9]  Id.  Petitioner further states that on direct appeal both attorneys raised the same grounds for relief,

_____

[9]The record shows that Petitioner was appointed counsel, not from the public defender's office, for trial and direct appeal. See, e.g., Exh. 1, Vol 1 at 3, 7.  The co-defendant was represented by the public defender's office.

except his co-defendant's counsel raised additional claims of prosecutorial misconduct and ineffective assistance of counsel. Id. Based on this claim in his co-defendant's motion, the appellate court reversed and remanded the co-defendant's case to the trial court. Id. Petitioner argues that appellate counsel should have either raised the same argument in his direct appeal, or moved the appellate court to consolidate both cases on direct appeal.[10] Id. at 22. Petitioner argues that his appellate counsel's failure to do so amounted to ineffective assistance of counsel.

Respondent argues that this ground is procedurally barred because Petitioner did not raise this claim in his first state habeas petition and any such claim is barred by the state's successive petition doctrine. Id. at 18 (citing Isley v. State, 652 So. 2d 409 (Fla. 5th DCA 1995)(acknowledging a bar to successive claims which were or could have been raised previously under doctrines or res judicata and the law of the case applies equally to petitions for habeas corpus and the two-year limitation of 9.141(c))). Respondent notes that Petitioner, in his successive state habeas petition, appeared to raise this claim, but the appellate court denied his petition without written opinion. Id. at 18. Respondent explains that Petitioner's co-defendant's

---

[10]Nevertheless, Petitioner "concedes that the error in Rodriquez' [co-defendant] appeal was specific to his testimony at their trial." Response at 17.

judgment was reversed when the appellate court found the co-defendant's counsel rendered ineffective assistance based on the prosecutor's questioning of the co-defendant concerning his prior convictions.[11]   Response at 17.   Nonetheless, Respondent, alternatively, argues that if the Court addresses the merits of this ground, Petitioner is not entitled to relief because his appellate counsel did not render ineffective assistance under Strickland.  Id. at 18-22.

In Reply, Petitioner argues that his appellate counsel's "failure to note to the appellate court that a co-defendant's case prevailed on appeal is ineffective assistance of counsel," citing Wilson v. State, 789 So. 2d 536 (Fla. 5th DCA 2001)(hereinafter "second Wilson"); Wilson v. State, 746 So. 2d 1209 (Fla. 5th DCA 1999)(hereinafter "first Wilson").  Id.  Petitioner asserts that because his appellate case became final before his co-defendant's case, he could not raise this issue in his first state habeas petition.  Id. at 10-11.

Respondent is correct that Petitioner raised this claim in his successive state habeas petition.   Exh. 11 at 96.   In his successive petition, Petitioner argued that his appellate counsel should have recognized that his trial counsel rendered ineffective assistance when he did not object to the prosecutor's cross-

---

[11]Respondent states that Rodriquez was later prosecuted and convicted of trafficking in cocaine in the amount in excess of 28 grams in another case.  The appellate court per curiam affirmed on March 4, 2005.  Response at 17-18.

examination of his co-defendant.  Id.  Petitioner acknowledges in his successive state petition that he argued appellate counsel was ineffective for not raising a prosecutorial misconduct claim, not an ineffective assistance of trial counsel claim, in his first state petition.  Id.; see also Exh. 7 at 83 (noting in Petitioner's first state habeas petition, Petitioner argued that appellate counsel was ineffective for not raising a prosecutorial misconduct claim stemming from the prosecutor's cross-examination of the co-defendant).  The appellate court denied both of the state habeas petitions.  Considering the State's rule against successive state habeas petitions, it appears Respondent is correct, and the Court finds that this claim is procedurally defaulted.  Further, Petitioner does not establish an exception to the procedural default.

Assuming *arguendo* that Petitioner could establish cause, prejudice, or a fundamental miscarriage of justice to overcome this procedural default, Petitioner would still not be entitle to relief on this ground.  The standard for evaluating whether appellate counsel provided ineffective assistance is essentially the same as the Strickland standard used to evaluate whether trial counsel rendered ineffective assistance.  See Shere v. Sec. Dept. of Corrections, ____ F.3d ____, 2008 WL 3066738 (11th Cir. 2008)(citations omitted).  The test for establishing appellate counsel's ineffectiveness is: (1) deficient performance; and (2) but for appellate counsel's deficient performance, petitioner would

have prevailed on appeal. Id. at *5. A post-conviction petitioner cannot prevail on a claim of ineffective assistance of appellate counsel if a legal issue would in all probability have been found to be without merit had counsel raised the issue on direct appeal. Connor v. State, 979 So. 2d 852 (Fla. 2007)

The record does not support a finding that appellate counsel's performance was deficient under Strickland. Petitioner believes that his appellate counsel was ineffective for failing to raise a claim of trial counsel's ineffectiveness when trial counsel did not object to the prosecutor's cross-examination of his co-defendant.[12] Petitioner does not establish that "no competent counsel would have taken the action that his counsel did take" as appellate counsel did not find trial counsel's actions inappropriate. See Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001). Further, counsel is not incompetent so long as the particular approach taken is sound trial strategy and in this instance, arguably, trial counsel's strategy may have been to allow the prosecutor to cast blame on the co-defendant, rather than on the Petitioner.

Petitioner cites to the Wilson cases as support for his argument in error. Exhs. 8, 12. In the first Wilson case, the appellate court found reversible error when the trial court allowed the jury to retire for deliberation with a written copy of the definitions of crimes charged, but without providing a copy of all

---

[12]Petitioner's  co-defendant had separate counsel.

instructions.  In the second Wilson case, the petitioner claimed ineffective assistance of appellate counsel when appellate counsel did not raise the issue concerning jury instructions on appeal, which was raised in the co-defendant's case.  Id. at 536. Appellate counsel conceded, in Wilson, that he did not raise the issue concerning jury instructions on appeal.  Id.  Accordingly, the appellate court granted the petition, vacated the judgment of conviction and sentence, and remanded for a new trial.  Id. Clearly, the Wilson cases are distinguishable from the case sub judice as the issue in Wilson involved jury instructions that affected both defendants whereas the issue in the case sub judice involved the questioning of Petitioner's co-defendant.  Therefore, alternatively the Court denies ground three on the merits.

**C.  The Information was Incorrect**

In ground two, Petitioner asserts that the Information was titled "Robbery with a Firearm," but nowhere in the Information are allegations that Petitioner possessed or used a firearm.  Petition at 18.  Petitioner argues that the failure to allege an element in the Information is an "absolute error."  Id.

In Response, Respondent first argues that this issue is a matter of state law and not proper for a federal habeas petition. Response at 14; Cabberiza v. Moore, 217 F.3d 1239, 1333 (11th Cir. 2000).  Moreover, Respondent argues that Petitioner did not preserve this claim and then raise an issue of constitutional

dimension on appeal.  Id. at 15.  Respondent argues, in the alternative, if the Court reaches the merits of this claim that "the sufficiency of a state charging document is not a matter for federal habeas review unless the information is so defective as to deprive the state trial court of jurisdiction." Id. at 15-16.  In Reply, Petitioner states that he will not "reargue his position" and requests that the Court reach a decision on the facts raised in the Petition.  Reply at 10.

In pertinent part, count one of the Information read "Robbery with a Firearm, F.S. 812.12; 775.087, 777.011, Punishable by Life Felony." Exh. 1, Vol. 1 at 4.  The Information further read, with regard to count one:

> On or about the 7th day of May in Lee County Florida [Carlos Figueroa] did unlawfully take away from the person or custody of Elmer Roberts And/Or Kathleen Roberts And/Or Connie Thomas, certain property, to-wit: jewwlry [sic], the property, of Treasures Unlimited And/Or Elmer Roberts And/Or Kathleen Roberts And/Or Connie Thomas, as owner or custodian, with the intent to permanently or temporarily deprive the owner or custodian of a right to the property, when in the course of the taking there was the use of force, violence, assault or putting in fear, contrary to Florida Statute 812.12; 777.011, in violation Florida Statutes 812.12; 777.011.

Id.

Petitioner's appellate counsel raised this claim on direct appeal.[13]  Exh. 2 at 20.  After the issue was fully briefed, the

---

[13]The Court notes that appellate counsel quote of the Information, exh. 2 at 20, is different from the Court's review of the Information.

appellate court *per curiam* affirmed the trial court's decision. Exh. 5.  At the state level, Petitioner did not raise this ground in terms of a federal constitutional violation.  Exh. 2 at 20-22. Petitioner argued that the Information was incorrect under Florida law.  Id.; see also Gray, 518 U.S. at 162-63; Jimenez, 481 F.3d at 1342 (stating claims raised before the state court must be raised in terms of federal law before raising the claim in federal proceeding).  Reviewing a finding of state law is not cognizable in a federal habeas proceeding.  Engle v. Isaac, 456 U.S. 107, 119-20 (1982); Davis v. Jones, 506 F.3d 1325, 1332 (11th Cir. 2007)("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."[14]  Davis, 506 F.3d at 1332 (quoting Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983)).  Further, this claim is now procedurally barred under state law as there is a two-year limitation on filing rule 3.850 motions

---

[14]Pursuant to Florida law, as a general rule a defect in the information is waive if no objection is timely made so long as the information does not wholly fail to state a crime.  State v. Burnette, 881 So. 2d 693, 694-695 (Fla. 1st DCA 2004).  "An information is fundamentally defective only where it totally omits an essential element of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy."  Id.  Further, even a failure to include an essential element in an indictment does not necessarily render the indictment fundamentally defective when the indictment references a specific section of the criminal code, which details the elements of the offense.  Id. at 695. Even if Petitioner raised this claim in terms of a federal constitutional violation, the Information contains all of the elements for the offense, robbery with a firearm, and references the applicable Florida statutes.  The jury was instructed on this charge.

and the State's successive petition doctrine.  Petitioner does not establish an exception to this procedurally default.  As such, the Court denies relief with respect to ground two.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**.

2.   The Clerk of Court shall: (1) terminate any pending motions; (2) enter judgment accordingly; and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this   22nd   day of September, 2008.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record